W. T. JOYCE COMPANY, Appellee, v. CARROLL LIGHT, HEAT
& POWER Co., et al., Appellants.

**Mechanic's liens:** PRIORITY: EVIDENCE. An affidavit for a mechanic's
lien setting forth the date of the contract for material and labor
and of furnishing the same is substantial evidence on the issue of
the date of the contract, in determining the priority of the lien
over a conveyance of the premises, and in refuting oral evidence
in an action to foreclose the lien, to the effect that the contract
was made before the conveyance. In this action the evidence is
held to show that the contract for material was made subsequent
to a trust deed of the property giving the deed priority over
the lien.

**Same:** NOTICE OF LIEN. The right of a grantee of premises who has
acquired by the conveyance a title superior to that of a material-
man under his lien is not affected by the question of notice of
the lien.

*Appeal from Carroll District Court.*—HON. Z. A. CHURCH,
Judge.

MONDAY, DECEMBER 18, 1911.

ACTION to foreclose a mechanic's lien. There was a
decree for the plaintiff, and the defendants appeal.—*Re-
versed.*

*Saunders & Stuart,* for appellants.

*Lee & Robb,* for appellee.

EVANS, J.—The question in controversy is one of
priority of liens. The common debtor of the contending
parties was the Carroll Light, Heat & Power Company.
The controversy herein turns upon the question whether

the plaintiff's mechanic's lien can take priority over a trust deed executed by the debtor to the American Trust & Savings Bank. Before proceeding to a statement of the controlling facts in the case, a few preliminary matters should be stated in order to avoid confusion in the use of names. The electric lighting plant at the city of Carroll has been owned successively by three corporations, namely: (1) Carroll Electric Light & Power Company; (2) Carroll Light, Heat & Power Company; (3) Carroll Light & Power Company. The common debtor is the second of the above named. One Brown was the manager of the plant for several years under the ownership of the first two named corporations. The plaintiff is an Illinois corporation doing business in the city of Carroll as a lumber company, under the management of one James Thompson. Prior to the transaction involved in this case, it sold lumber and other materials to the lighting plant, and kept a current account therewith. The second corporation was organized in March or April, 1904. It was so organized for the purpose of taking over the lighting plant from the first-named corporation, and it became the purchaser of the same. On July 29, 1904, it executed a trust deed to the American Trust & Savings Bank to secure an issue of bonds to the amount of $100,000. Such deed was duly recorded in Carroll county on August 4, 1904. In the latter part of the year 1904 this corporation began the erection of an addition to its building, and purchased material therefor from the plaintiff to the amount of nearly $700. On July 6, 1905, the plaintiff duly filed a claim and statement for a mechanic's lien duly sworn to by the plaintiff's manager, James Thompson. In the affidavit so filed, it was averred that such material was furnished under a contract entered into August 30, 1904, and that the first item was furnished on the same date and the last on June 20, 1905. The sum total claimed was $683.45. In September, 1905, the plaintiff filed another claim for mechanic's lien under a contract

alleged in the affidavit to have been made on July 14, 1905, and that the first item thereunder was furnished on July 14, 1905, and the last on September 25, 1905. On September 28, 1905, the plaintiff herein joined as coplaintiff with many other creditors in an action against the Carroll Heat, Light & Power Company, wherein it was alleged that the company was insolvent, and wherein it was prayed that a receiver be appointed to take over and manage its property, and to sell the same subject to the trust deed of the American Trust & Savings Bank. In such petition the plaintiff alleged that it held a mechanic's lien, and asked that the proceeds from the sale of the property be applied to the payment thereof. In pursuance of this petition, one Robb was appointed receiver. He took possession of all the property, and managed it, and finally sold it under the order of the court to one Collins. While managing the property he paid $1,200 of interest on the bonds which were secured by the trust deed. The property was sold by such receiver subject to the trust deed for $50, plus the expense of the receiver, amounting to about $600 more. Such sale was approved by the court with the acquiescence of all the plaintiffs in such proceeding, and the formal transfer of the property was made to Collins on June 26, 1906, and the receiver was thereupon discharged. Up to this point the priority of the trust deed to the American Trust & Savings Bank over the mechanic's lien of this plaintiff had never been questioned, nor was the American Trust & Savings Bank a party to such receivership proceedings. On July 26, 1906, the American Trust & Savings Bank brought its action in the federal court at Council Bluffs to foreclose the trust deed. In such action the Carroll Light, Heat & Power Company, and Collins, the purchaser at receivership sale, were made parties defendant. In such action a decree was entered on July 15, 1907, establishing the superiority of the trust deed over the claims of the defendants. The plaintiff herein was not a

party to that suit. In pursuance of this decree the property was sold at master's sale to defendant Long. Long afterwards conveyed the same to the defendant Carroll Light & Power Company, and this corporation executed a trust deed to the Michigan Trust Company. On March 28, 1907, the plaintiff herein brought this action in the district court of Carroll county. On May 6, 1907, it obtained a decree in said court against the Carroll Light, Heat & Power Company and against Collins, and the cause was continued as to other defendants. The cause came on for trial as between the plaintiff, and the appealing defendants in December, 1908.

In its petition in this action the plaintiff claims that its mechanic's lien is prior and superior to the lien of the trust deed executed to the American Trust & Savings Bank. Such claim presents a change of position by the plaintiff, and is predicated upon a third affidavit filed on March 19, 1907, with the clerk of the district court, claiming a mechanic's lien as from July 7, 1904, and purporting to amend the former affidavit, which claimed a lien only from August 30, 1904. It is this shifting of dates by this amended claim that makes the controversy. As already indicated, the trust deed of the American Trust & Savings Bank was recorded on August 4, 1904. If the plaintiff's mechanic's lien rests upon a contract entered into August 30, 1904, the trust deed has priority. If such mechanic's lien rests upon a contract begun on July 7, 1904, then such lien takes priority. The appellants deny the claim of plaintiff that its contract was entered into on July 7, 1904. They also contend that the plaintiff elected its remedy in the receivership proceedings, and that Collins, as purchaser at the receivership sale, took the property free from plaintiff's lien, and that by the terms of the sale he purchased subject to the trust deed. On the other hand, the plaintiff contends that the appellants are not holding any rights under Collins, and are therefore not affected by the terms

of his purchase. The foregoing is a sufficient statement to show that we are confronted first with a question of fact, and this we will now proceed to consider.

I. Can it fairly be said upon this record that plaintiff's contract for material for the addition was made on July 7, 1904? It is urged by plaintiff that the evidence is undisputed to that effect, and that it must, therefore, be accepted. The only witnesses to the alleged transaction were Thompson as manager for the plaintiff and Brown as manager for the Light & Power Company. Brown died before the trial, and Thompson was the only witness to testify to the transaction. Thompson testified at the trial that Brown contracted with him for the material for an addition on July 7, 1904, and that he furnished a part of the material that day, and that all the material afterwards furnished by him, including that described in the second mechanic's lien, was furnished under that same contract. As against this, the appellants rely upon the two affidavits of Thompson filed July 6, 1905, and September 28, 1905, respectively.

*1. MECHANIC'S LIENS: priority: evidence.*

These affidavits were filed in pursuance of a statutory requirement. They are specific as to dates and are clearly contradictory to the present claim. They must be regarded as substantial evidence upon the point at issue and as disputing the evidence of Thompson upon the trial. In the first of these it is stated that an oral contract was entered into on the 30th of August, 1904, and that the first item of the account was furnished on the 30th of August, 1904, and the last on the 20th of June, 1905. The second affidavit made claim for mechanic's lien for material furnished after July 14, 1905. It alleged that the contract for such material was made on July 14, 1905, and that the first item of the account was furnished on that date and the last on September 25, 1905. No satisfactory explanation is made of the discrepancy of dates between the original affidavit and the amended affidavit. Plaintiff's books were

introduced in evidence. The page of the ledger covering this period is as follows:

## CARROLL ELEC. L. & P. CO.

| Date. | Folio | Debits | Date | Folio | Credits. |
|---|---|---|---|---|---|
| 1904-. | | | 1904- | | |
| June 8 | 230 | 1.65 | July 6 | 75 | 4.45 |
| " 14 | 14 | .90 | | | |
| " 20 | 30 | 1.00 | | | |
| " 29 | 57 | .90 | | | |
| | | | | | 4.45 |
| July 7 | 75 | .20 | (Sept. 5- | Bal. fr.) | 141.84 |
| " 7 | 80 | .40 | | | |
| " 12 | 91 | .20 | | | |
| " 14 | 95 | .50 | | | |
| " 16 | 101 | 18.95 | | | |
| " 27 | 128 | .50 | | | |
| Aug. 6 | 156 | 1.30 | | | |
| " 18 | 181 | .15 | | | |
| " 29 | 211 | .70 | | | |
| " 30 | 213 | 5.65 | | | |
| " 30 | 213 | .60 | | | |
| " 31 | 216 | 66.61 | | | |
| Sept. 1 | 1 | 1.45 | | | |
| " 1 | 1 | 8.30 | | | |
| " 2 | 5 | 2.70 | | | |
| " 2 | 5 | 22.00 | | | |
| " 2 | 7 | 5.25 | | | |
| " 3 | 8 | 6.38 | | | |
| | | 141.84 | | | 141.84 |

This was a part of the current account between the parties. It is manifest that the contract or order for material for an addition to the building might have occurred upon any of these dates. This account was in existence in this form when the original affidavits were made. The date then fixed upon was August 30th. Nothing is disclosed in the record which would make Thompson's recent recollection more reliable than his first. He does claim that the fact that the account was balanced on the 6th of July aids his memory as to the date of the contract, but that fact was as prominent at the first as at the last. The items

actually furnished between July 7th and August 30th are
as follows:

1904.

| July | 7 | 2 lbs. Nails | $0 | 20 |
| | | 1 1-10 8 Finish | | 40 |
| | 12 | To 20 lbs. Fire Clay | | 20 |
| | 14 | To 2 2x6 10 | | 50 |
| | 16 | To 12 sax Cement | 9 | 00 |
| | | To 12 Sax | 1 | 20 |
| | | 3 6-6 144 8 2-12 12 192 336 | 8 | 75 |
| | 27 | To 50 lbs. Fire Clay | | 75 |
| Aug. | 7 | 11 wide select | | 75 |
| | | 1 1-14 12 select | | 55 |
| | 18 | 3 select | | 15 |
| | 29 | 6 1-4 12 Fence | | 70 |

These items appear regularly upon the plaintiff's books.
The books are not impeached by any appearance of tam-
pering. None of these items were included in the original
statements of account for mechanic's lien. No explanation
of such omission is attempted in this record, and we can
only presume that they were omitted because they ante-
dated the contract for material for the proposed addition.
Thompson did testify in a general way that everything was
furnished for the building of the addition. On cross-ex-
amination he testified as follows:

I am the man that verified or made the affidavit at-
tached to the three mechanic's liens that were filed. The
first one was verified by me on the 6th of July, 1905, the
next one was made by me on the 21st day of September,
1905, and the next one was made on the 19th day of March,
1907. Q. Now, how did it happen that your recollection
was so much better on the 19th day of March, 1907, in
reference to when that oral contract was made than it was
in July or September, 1905? A. I could not tell you. Q.
How did it happen that you didn't put these items into
the affidavit that you made on the 6th day of July, 1905;

that is, those items covering the months of July and August, 1904? A. It was an error in making out the bill. It ought to have went back from the time that statement was. I think it was in July that he paid me the little amount there. Q. You were the bookkeeper at that time? A. Yes, sir. Q. You were the manager? A. Yes, sir. Q. Now, didn't you and don't you know as a matter of fact, Mr. Thompson, that Mr. Brown didn't commence the rebuilding of that plant until the last days of August, 1904? A. That may be. Q. And these little items that were bought during July and August were simply little items that were bought from time to time for use in the plant? A. They were used in the building. Q. But not for the rebuilding of the building? A. May not have been for the rebuilding, but they were used for the building. Q. That is, they were used in the plant there? A. Yes. Q. Now, let me ask you this question: Wasn't your recollection better as to the time when the oral contract was made on the 6th of July, 1905, than it was on the 19th of March, 1907? A. Yes; I suppose it would be. It naturally would be. Q. You claim now that you made that mistake of locating the time of making that contract as the 30th day of August, instead of the 6th day of July, 1904? A. No; I think the oral contract was in July. Q. You said on the 6th of July, 1905, did you not, under oath, that it was made on the 30th day of August, 1904? A. Yes; I guess I did. If it is right there, it shows. Q. As a matter of fact, Mr. Brown didn't have the plans there for the proposed changes and rebuilding of the plant until August, 1904, did he? A. I don't know that he ever had any plans; I never saw any. Q. Don't you know that he didn't start the rebuilding of that plant until August 30, 1904? A. I can't tell you what time it was started. Q. Don't you know it was about that time, and wasn't that one of the reasons why you fixed the time of the making of that oral contract for that first affidavit as the 30th day of August, 1904, when he bought the first big bill of stuff? A. Well, he made an oral contract before that bill was bought. Q. Yes; but the reason you fixed the time at the 30th of August was because it was just before the big bill was bought that he made the arrangement, wasn't it, Mr. Thompson? A. That might have been.

Considering the evidence as a whole, it is quite evident that the present recollection of the witness Thompson upon which the amended affidavit is based is argumentative, and mere conclusion. He does not remember that July 7th was the date of the contract, but he is satisfied from an examiantion of the books that it must have been such date. As against such a conclusion, there must have been some reason why August 30, 1904, was fixed as the date of the contract when the first lien was filed. The true date was more readily ascertainable then than later. Brown, the manager of the light company, was then living, and was presumably interested in the statement of a correct date. This consideration is emphasized by the conduct of the parties throughout the receivership proceedings wherein the priority of the trust deed was recognized at all times without question. If after such long acquiescence a new date is to be put forward which reverses the rights of the parties, the evidence of a mistake ought to be more clear and satisfactory than appears in this record. Without imputing to the witness Thompson any bad faith in his present conclusion, we reach the conclusion that the proof in support of the amended affidavit is not sufficient, and that the plaintiff's mechanic's lien must rest upon the affidavits originally made. Our conclusion of fact announced in the foregoing division is decisive of the case.

The appellee plaintiff urges upon our attention that the present owner of the plant and the Michigan Trust Company acquired their rights with notice of plaintiff's 
2. SAME: notice of lien. 
pending suit, and that they are precluded thereby from questioning the priority of the mechanic's lien. If the rights of such appellants were dependent upon want of notice, then appellee's contention would be entitled to consideration. But the rights of such appellants exist quite independent of the question of notice. They are not asking protection as innocent purchasers. They stand here on a question of right, regardless of no-

tice. They have acquired their title through the trust deed of the American Trust & Savings Bank. If such lien was superior to the lien of the appellee plaintiff, then the rights of the purchasers thereunder are superior also. The question of notice or want of notice therefore is not an element in the appellants' case. Other questions argued by counsel need not be discussed.

The decree of the court below must be, and is, *reversed*.